**Bradie MANNS, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

No. S 83–325.

United States District Court, N.D. Indiana, South Bend Division.

May 18, 1984.

Robert C. Rosenfeld, South Bend, Ind., for plaintiff.

R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., Donald Moroz, Asst. U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This is an action for judicial review of a final decision of the defendant Secretary of Health and Human Services determining that plaintiff is no longer entitled to a period of disability under 216(i) of the Social Security Act or disability insurance benefits, as provided by Section 223 of the Act. 42 U.S.C. § 423.

Plaintiff filed an application for a period of disability and disability insurance benefits on August 4, 1970, alleging that he became unable to work February 3, 1970, at age 45. A period of disability was established for plaintiff, however, on June 21, 1982, he was notified that he was no longer considered under a disability as of June 1982. He received a Social Security Termination notice dated July 26, 1982, advising him that he was last entitled to benefits in August 1982. Upon reconsideration, that determination was affirmed, after the Indiana State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that plaintiff was no longer under a disability. The Administrative Law Judge (ALJ), before whom plaintiff and his attorney appeared, considered the case *de novo*, and on April 27, 1983, found that plaintiff was no longer under a disability. The ALJ's decision became the final decision of the Secretary of Health and Human Services when the Appeals Council approved that decision on June 24, 1983. This case was filed in this court on July 22, 1983. The plaintiff filed for summary judgment on February 17, 1984. Thereafter, the defendant filed her motion for summary judgment on May 1, 1984.

The only issue before the court in this action is whether the final decision of the

Secretary is supported by substantial evidence. To qualify for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423.

The following facts are a summary of the findings of the ALJ in this case. Plaintiff is a 58 year old man with an eighth grade education. He worked in the past as a maintenance man in a factory. He complains that he is and has been disabled since March 1973 due to severe constant headaches.

Medical evidence relative to the period in which plaintiff was found to have been under a disability indicates that plaintiff was originally granted benefits due to severe cephalgia (headache) and conversion reaction. Plaintiff claims he has had severe migraine headaches for 30 years. In 1970, plaintiff's recurrent headaches became so severe that he discontinued employment and sought medical treatment. He received approximately 15 electroconvulsive treatments at that time. Currently, he takes prescription pills and receives weekly shots of Demerol, but he testified that no treatment has completely relieved his headache pain.

On May 21, 1982, plaintiff underwent a consultative psychiatric examination by Dr. Larry Musselman. Dr. Musselman described plaintiff as well oriented in all spheres with average intelligence, normal thought processes, and unimpaired judgment. In addition, plaintiff displayed no evidence of perceptual distortions, denied hallucinations and interpreted proverbs concretely. Dr. Musselman concluded that plaintiff's headaches did not appear to be "of emotional origin".

On June 15, 1982, plaintiff was examined by Dr. Richard Buck, a specialist in internal medicine. Dr. Buck reported that plaintiff's physical exam was "essentially negative". His impression was that plaintiff has migraine headaches; diabetes mellitus, currently controlled by insulin; and arthritic problems which would not prevent him from performing light work activities. The doctor suggested that plaintiff's arthritis could be further improved by treatment with anti-inflammatory agents.

Plaintiff was hospitalized for three days in June 1982 to seek diagnosis and treatment for his headaches. Upon admission, Dr. Steven A. Musselman described plaintiff as "robust". Two tumors which were removed from plaintiff's back turned out to be a sebaceous cyst and a lipoma. Dr. Musselman could find no cause for plaintiff's headaches but concluded they were not related to his diabetic condition, which was under "fine" control by Lente insulin.

Finally, plaintiff was examined on October 7, 1982 by Dr. Bhupendra K. Shah, a specialist in neurology and psychology. Dr. Shah opined that plaintiff's headaches are tension related and could be psychogenic as well. He reported that plaintiffs' neurological examination was within normal limits and that plaintiff appeared quite healthy. Dr. Shah recommended higher doses of anti-depressants and anti-migraine medications, although he stated it was very uncommon for migraine headaches to occur every day. He felt that plaintiff should be able to do "some type of work".

Plaintiff testified that he is disabled by severe pain an average of four out of seven days. Yet he admitted that "on a good day" [he] "could do about anything around the house there was to do". He stated that he gardens and mows the lawn when he "feels like it". Plaintiff's daughter also testified that he enjoys playing with his grandchildren when he is not having a headache.

## II.

Plaintiff asserts that it was improper for the Secretary to deny him benefits "simply because no doctor can pinpoint the cause of his unquestioned headaches." Plaintiff argues that a finding of disability may be based upon pain alone when there is no objective medical evidence or clinical find-

ings. Plaintiff then cites, *inter alia, Lee v. Heckler,* 568 F.Supp. 456 (N.D.Ind.1983); *Tillman v. Weinberger,* 398 F.Supp. 1124 (N.D.Ind.1975); *Kelley Weinberger,* 391 F.Supp. 1337 (N.D.Ind.1974), as authority for this proposition. The plaintiff in *Lee* had Paget's Disease, *Lee, supra,* at 570; the plaintiff in *Tillman* had arthritis, *Tillman, supra,* at 1125; and the plaintiff in *Kelley* had degenerative disc disease. In all of the cases cited by plaintiff, the claimants had the requisite "medically determinable physical ormental impairment." 42 U.S.C. § 416(i).

Courts have held that pain, even without objective medical evidence, can be disabling. *Dorsey v. Heckler,* 702 F.2d 597 (5th Cir.1983); *Andrews v. Schweiker,* 680 F.2d 559 (8th Cir.1982); *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751 (2d Cir.1982); *Kennedy v. Richardson,* 454 F.2d 376 (3d Cir.1978); *Thorne v. Weinberger,* 530 F.2d 580 (4th Cir.1976); *Celebrezze v. Warren,* 339 F.2d 833 (10th Cir.1964).

 There is no question that pain alone can be disabling. The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment regarding the pain alleged by claimant. *Rivera v. Schweiker,* 560 F.Supp. 1091, 1099 (S.D.N.Y.1982). The ALJ in the present case properly exercised his discretion and found the testimony of plaintiff and his daughter, Dine Moorow, fully credible. His mistake was in requiring plaintiff to prove more than he could possibly prove. The record shows that plaintiff has done all he can do to diagnose and treat his headaches. It is improper to deny him benefits simply because no doctor can pinpoint the cause of his unquestioned headaches.

Plaintiff testified that his headaches were so severe that it totally limited his ability to carry on a normal life. He stated, "[i]t gets terrible. It just about as bad a pain as a human being can stand." The pain is so bad that plaintiff is forced to receive an injection of Demerol on a weekly basis just to allow him to sleep. On his bad days, plaintiff testified that he is not able to do anything.

Diane Morrow, plaintiff's daughter, also testified. Mrs. Morrow corroborated the testimony of her father. She testified that when he has his headaches he cannot do anything. She further testified that he is not able to relate socially to his own grandchildren due to the pain.

The ALJ, after reviewing all the evidence including the testimony of plaintiff and Mrs. Morrow, rendered a written decision and made certain findings. He acknowledged that plaintiff's condition is the same now as when he was first awarded benefits by a previous ALJ.

> This 57 year old claimant has suffered for many years severe constant headaches. He was found to be disabled by Administrative Law Judge Harold C. Mull in a decision entered December 22, 1972. As Judge Mull pointed out in his decision, despite extensive evaluation and intensive and multiple methods of treatment, the claimant's headaches have persisted. This remains true to this date. The claimant appeared his stated age at the hearing and shook and trembled throughout, while appearing to be in considerable pain. (Tr. 10).

The ALJ further found plaintiff and his daughter to be credible witnesses.

> Without doubt the claimant has made many attempts to treat his problem but to no avail. He and his daughter were very credible witnesses and I have no doubt that the claimant suffers from the headaches he described. With such headaches, it would be virtually impossible for anyone to work on a sustained basis. (Tr. 11).

In his specific findings the ALJ finds that the plaintiff has constant severe headaches and that his testimony is credible. He, however, fails to find plaintiff disabled because no physician can find a cause for his pain. (Tr. 12).

### III.

 There is a presumptive validity of the earlier determination of disability.

There can be no termination of disability benefits until there is substantial evidence of actual improvement to the point of no disability. This presumption is necessary to avoid relitigating the evidence presented in support of the initial administrative decision. *Vaughn v. Heckler*, 727 F.2d 1040 (10th Cir.1984). *See also Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982); *Finnegan v. Matthews*, 641 F.2d 1340 (9th Cir.1981); *Shaw v. Schweiker*, 536 F.Supp. 79, 83 (E.D.Pa.1982).

■ Thus, there must be an improvement to support a termination of benefits. The ALJ must be required to evaluate the medical evidence upon which the claimant was originally found to be disabled. Without such a comparison no adequate finding of improvement can be rendered.

■ It is correct that the burden of proof as to the medical basis of a finding of disability remains on the claimant at all times, both in the initial proceeding to establish disability and in a subsequent termination proceeding. *Daring v. Heckler*, 727 F.2d 64 (3d Cir.1984). If a claimant makes a showing of the inability to return to a customary occupation, the Secretary has the burden of proving that the claimant has the capacity to perform jobs that exist in the national economy. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979).

The issue of burden of proof in cases involving the cessation of benefits has recently been addressed by the Third Circuit in *Daring v. Heckler, supra:*

> In our recent opinion in *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir.1983), this court addressed the issue of proof in cases involving the cessation of benefits under the Social Security Act, specifically, the relevance of a prior finding of disability to the claimant's efforts to satisfy the burden of proof as to continuing disability. We held,
>
>> Basic principles of fairness as well as the need to provide both the appearance and fact of consistency in administrative process lead us to conclude that in a termination proceeding, once the claimant has introduced evidence that his or her condition remains essen-

tially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling..... The presumption of a continuing disability does not affect the ultimate burden of proof. It imposes on the Secretary only the burden of going forward with evidence to rebut or meet the presumption.

> . . . .
>
> Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant undertake gainful activity.

> \*　　\*　　\*　　\*　　\*　　\*
>
> Under *Kuzmin*, therefore, the burden has shifted to the Secretary to show either "that the initial disability determination was clearly mistaken", 714 F.2d at 1238, or to show "that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful acivity." *Id.* at 1237. Tr. at 13.

*Daring*, 727 F.2d at 68–69.

■ While the so-called improvement standard for termination of benefits differs from the standard for granting benefits initially, a showing of an erroneous original determination of disability will also support the termination of benefits. *Silvas v. Heckler*, 578 F.Supp. 1401 (W.D.Pa.1984). No such showing is suggested here.

Judge Carter in *Mersel v. Heckler*, 577 F.Supp. 1400 (S.D.N.Y.1984) has performed a most valuable judicial service in summarizing and analyzing the burden of proof in termination cases. Such is well worth extensive quotation:

> A review of the Secretary's decision in termination hearings is not so well delineated in this Circuit. Neither the proof that must be adduced to challenge successfully the termination decision, nor the allocation of presumptions and burdens between the claimant and the Secretary have been set out. *See Wheeler v. Heckler*, 724 F.2d 262 (2d Cir.1983). The

Secretary urges the Court to place the burden of proof on claimant to demonstrate that her disability continued past the time of cessation found by the Secretary, requiring the Secretary to show only that the claimant is now able to engage in substantial gainful activity, regardless of whether, actual improvement in claimant's condition can be demonstrated. Plaintiff neglects to address this issue, and the statutory language sheds no guiding light on the matter. Nevertheless, the Court rejects the Secretary's position.

The standard proposed by the Secretary takes no account of the prior determination of claimant's disability. The Secretary's approach would afford an independent, second review of claimant's disability claim—an opportunity to analyze claimant's condition as if she or he had applied anew for disability benefits. Continuing disability investigations ("CDI") and the termination procedures that may result from them were not, however, intended to subject claimants to perpetual *de novo* reviews. Rather, CDIs were implemented to insure that benefits do not continue to be paid to those who have medically or otherwise recovered from their disability.

A demonstration that a claimant has improved has been and remains the central issue in termination proceedings. Until 1980, it was assumed that most disability awards involved chronic, static, or progressive impairments subject to little or no medical improvement. Consequently, CDIs were only undertaken in cases of certain enumerated disabilities, where improvement was deemed possible. S.Rep. No. 408, 96th Cong., 2d Sess. 60–61, *reprinted in* 1980 *U.S. Code Cong. & Ad.News*, 1338–39. Because of the relatively small number of reviews of these awards, critics argued that continued payments of benefits were made to many persons who had medically or otherwise recovered from their disability. Congress responded to these criticism. CDIs are now mandatory, at least once every three years, as to each recipient whose disability has not been determined to be permanent. 42 U.S.C. § 421(h) (Supp. 1983). This response was, however, strictly quantitative—an expansion of the oversight program by increasing the number of reviews to be conducted. Absent any indications to the contrary, upon review only those who had improved or recovered could be considered ineligible for continued benefits.

Thus far the Third, Fourth and Ninth Circuits have refused to adopt the Secretary's proposed approach to termination proceedings. Each circuit has required a demonstration of some change in claimant's condition before his or her benefits may be discontinued. Each circuit has found that a claimant, having already carried the burden of proof in a prior hearing on the merits of his or her disability claim, is entitled to the benefit of a presumption that the disability still exists. As a result, in the Third, Fourth and Ninth Circuits the Secretary must come forward with evidence that claimant's condition has improved.

The presumption of continuing disability merely reflects a presumption made in the Act itself—that the Secretary's initial decision was final and correct. Except for the internal review process, the Act prohibits appeals by the Secretary of disability determinations by the ALJ or the Appeals Council. *Cf.* 20 C.F.R. §§ 404.-969, 404.981, 416.1455 (1982). The Act makes no provision for correction of errors in the initial determination based on some arguably more informed, later review of the evidence. *See Dotson v. Schweiker*, 719 F.2d 80, 82 (4th Cir.1983). Moreover, the presumption is consistent with the allocation of burdens under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq., see Dotson, supra,* 719 F.2d at 82, and with the familiar principle "that a condition, once proved to exist, is presumed to continue to exist." *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir. 1982). It is an important point, as well, that although the presumption requires the Secretary to come forward with evidence of improvement in claimant's health, it does not shift the burden of

proof to the Secretary in termination hearings. *See Mathews v. Eldridge,* 424 U.S. 319, 336, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

The approach also has a definite practical appeal. If termination hearings are viewed simply as an enlargement of the review process, arbitrary decisions will result. A "disconcerting picture ... [of] triple administrative flip flop" was presented to the Third Circuit, which lead it to adopt the rebuttable presumption of continuing disability based on "basic principles of fairness and the need to provide both the appearance and fact of consistency in the administrative process." *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir.1983). (footnotes omitted).

*Mersel,* 577 F.Supp. at 1403–05.

This court is convinced that the approach adopted in the Third, Fourth and Ninth Circuits is sound and finds the reasoning and result suggested in *Mersel* to be most appealing. The same is now adopted by this court.

The approach taken here is in addition to, and not in conflict with, that announced in *Cassiday v. Schwekier,* 663 F.2d 745 (7th Cir.1981), relying on *Miranda v. Secretary,* 514 F.2d 996 (1st Cir.1975).

This case is now REVERSED and REMANDED in accord with the legal principles here announced. A fresh hearing shall be conducted before a different ALJ who shall give the parties the opportunity to develop new evidence in comparison to the old evidence considering the presumptions that so necessarily exist. SO ORDERED.