Ozie TILLMAN, Plaintiff,

v.

Caspar WEINBERGER, Secretary, Department of Health, Education and Welfare, Defendant.

No. H 74–88.

United States District Court,
N. D. Indiana,
Hammond Division.

April 15, 1975.

David P. Matsey, Legal Aid Society, Gary, Ind., for plaintiff.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This is an action brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), for a review of a final decision of the United States Secretary of Health, Education and Welfare that the plaintiff was not entitled to a widow's disability insurance benefits under Sections 202(e) and 223(d)(2)(B) of the Social Security Act, 42 U.S.C.A. §§ 402(e) and 423(d)(2)(B).

The plaintiff filed an application for widow's disability benefits on June· 1, 1972, wherein she claimed that she was unable to work, commencing in February 1972. Her application was initially denied on September 28, 1972. Her request for reconsideration was denied January 24, 1973. She then requested and was granted a hearing before an Administrative Law Judge of the Bureau of Hearings and Appeals, Social Security Administration. The hearing was held in Chicago, Illinois, on June 20, 1973. Testimony was taken from the claimant and two other witnesses. The Administrative Law Judge entered his findings and decision on July 24, 1973 that the claimant was not entitled to widow's disability benefits. A request for review by the Appeals Council was filed by the claimant on September 17, 1973, and the Appeals Council on January 21, 1974 affirmed the decision of the Administrative Law Judge. That being the final administrative action, claimant then commenced this action on March 21, 1974. This case is now before the Court on cross-motions for summary judgment.

The only issue before the Court in this action is whether the final decision of the Secretary denying the claimant's application for widow's disability benefits is supported by substantial evidence.

The plaintiff was born in Claremont, Mississippi, on September 3, 1922. Her husband died on October 22, 1965 and she has not remarried. She indicated that she lives in her own home at 3172 West 19th Place, Gary, Indiana. She had children but they are all grown. Her height is 5 feet 3½ inches and her weight has averaged about 175 to 180

pounds. Numerous medical reports are contained in the record.

In a report dated November 27, 1974 Dr. Charles Disney indicated that he had seen the claimant on November 7, 1973. Upon examination he found her blood pressure to be 180/110 and her weight to be 177 pounds. He found grating on the knee on passive and active motion with pain on passive and active motion of the shoulders. Furthermore, he found decreased motion of the claimant's lumbar spine on all planes accompanied by pain. He diagnosed the claimant's conditions as hypertensive cardiovascular disease with angina and severe arthritis involving shoulders, knees and the lumbar spine. He concluded by saying that he felt she was definitely disabled for gainful employment.

Doctor Robert Bills in a report dated June 20, 1973 concluded after examina‑ tion that the claimant suffered from hypertension with cardiovascular disease complicated by menopausal syndrome. He concluded that she was unable to work at any gainful occupation.

Doctor William Lewis in a report dated June 18, 1973 said that he had been treating the claimant since February 22, 1972 for various problems including severe rheumatoid and early degenerative osteoarthritis, severe menopausal syndrome, and anxiety depression. He said that she has marked difficulty with the manipulation of objects and is in severe pain most of the time even though she is under medication. He concluded that her present difficulties rendered her totally and permanently disabled.

In response to a questionnaire from Indiana Rehabilitation Services, Dr. Disney on December 26, 1972 diagnosed the claimant's disease based upon an examination conducted that day as osteoarthritis, acute anxiety and paronychia of the right thumb. He concluded that the claimant has never worked and was unable to do so now.

A consultive examination arranged by the Social Security Administration was conducted on August 22, 1972 by Dr. John Lanman. Dr. Lanman had examined the claimant only once and never treated her. The report indicates numerous complaints of arthritis in the left knee, both shoulders and right wrist. She also complained of pain in the joints and of high blood pressure. She said that she does not sleep well and has hot flashes. Her surgical record indicates that she had an appendectomy, an operation for "pus tubes", and a hysterectomy. She reported headaches, gastric distress, and constant constipation. There was reported a family history of heart trouble and arthritis. The claimant indicated she was presently under medication. Dr. Lanman said the examination revealed a well-developed, well nourished, colored female who is maudlin. Her blood pressure was 140/90 and her pulse rate was 68 and regular. He said the fundi were within normal limits, the thyroid was not enlarged, lungs were clear and the heart was not enlarged. He said there was a full range of motion of her limbs and found no swelling in any of her joints. He believed that her chief problem was menopause and depression. Based upon this solitary examination and contrary to her regular physician's treatment he suggested a change in medication. He concluded by saying, "I suspect that she probably could do domestic work or other unskilled labor without excessive difficulty." The complete blood chemistry test was within normal limits except for the LDH and total protein tests. An X-ray referral was made by Dr. Lanman and the radiologist reported that the chest X-ray was normal and the left knee X-ray was also normal. Apparently no X-rays of the shoulders or other limbs were taken. An electrocardiogram taken on August 22, 1972 was normal.

Dr. Lewis in a report dated July 13, 1972 said he examined the claimant on that date and found a 40–50% weakness at the wrist and hands with a 25–30% deformity of the joints of the hands. He noted an abnormal EKG report indi-

cating a Grade II systolic murmur with a blood pressure level of 140/90. His current diagnosis was moderate to severe rheumatoid and osteoarthritis of the hands, wrists, and major joints including the back.

At the hearing the claimant testified that her medical problems consisted of high blood pressure, arthritis, and nerves. She had an appendectomy in 1939, a tubal ligation in 1957 and a hysterectomy in 1960. She said she was taking medication for high blood pressure and arthritis. She said that her arthritis was painful and that it affected her shoulders, knee and hand. Her representative elicited testimony much of which related to her education, employment history and marriage. She said she was presently being treated by Dr. Bills, Dr. Disney and Dr. Lewis. She said she was hospitalized for one week in 1956 for nerves. She said she blacks out and has dizziness in the head. She reported that she was unable to do much housework and that she had to rely on her children for help with household chores. She added that she experiences dizziness and headaches which apparently last a couple of days. Her arthritis has been bothering her for a little over one year.

Barbara Jones, the claimant's daughter, testified that her mother could not do her own housework and cooking and that she would have to assist. She said that her mother has had problems with arthritis for almost a year and a half. She would have to rub her mother down and put hot water bags on her arm. Her daughter reported that in April 1973 she had to take her mother to the emergency room because of a fainting spell and dizziness. She said her mother's condition has worsened over time and that she was forced to quit her job to help take care of her. She said her mother's nerves were so bad she had trouble eating and that whenever she would get a headache she would vomit.

Joyce Dickinson, another daughter of the claimant, testified that she would also perform many household chores for her mother. She noted that her mother's condition has worsened and that she would awaken shaking with nightmares.

In Social Security cases the burden of proof is upon the claimant to establish the existence of her disability. *Kutchman v. Cohen*, 425 F.2d 20, 24 (7th Cir. 1970).

The standard to be applied on judicial review is whether the findings and decision of the Secretary are supported by substantial evidence. 42 U.S.C.A. § 405(g). The Court's duty upon review is to examine the entire record to ascertain if the decision was supported by substantial evidence and a trial de novo is not proper. *King v. Gardner*, 370 F.2d 652 (6th Cir. 1967). The United States Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1972) defined supported by substantial evidence as being:

". . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might expect as adequate to support a conclusion." Id. 91 S.Ct. at 1427.

The definition of disability is found in Sections 202(e) and 223(d)(2)(B) of the Social Security Act, 42 U.S.C.A. §§ 402(e) and 423(d)(2)(B). Disability means:

". . . [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C.A. § 423(d)(1)(A).

The Act further provides that:

"A widow . . . shall not be determined to be under a disability (for purposes of section 402(e) or (f) of this title) unless . . . her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the

Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C.A. § 423(d)(2)(B).

The regulations referred to in Section 423(d)(2)(B) may be found in Regulation No. 4, 20 C.F.R. §§ 404.1504–404.1506, Appendix.

■ It is clear that the definition of disability for widows is more strict than the definition of disability for disabled workers and childhood disability applicants. The Senate Finance Committee in reporting on the relevant portion of the Act said:

"The bill would also provide benefits . . . for certain disabled widows . . . and disabled dependents widowers under a test of disability that is somewhat more restrictive than that for disabled workers and childhood disability beneficiaries." Sen.Rpt.No.744, pages 49–50, 90th Cong., 1st Sess., U.S.Code Cong. & Admin.News, 1967, p. 2883.

Though the standard is more difficult to meet it is not as defendant suggests in his Memorandum, page 17, the most strict standard possible. The Senate Finance Committee as mentioned above said that the standard for widow's disability benefits was only "somewhat more restrictive." Id. The test that must still be applied is whether a widow has a physical or mental impairment sufficient to preclude her from engaging in any gainful activity. 42 U.S.C.A. § 423(d)(2)(B). The Act does not require, for instance, that a widow be entirely bedridden to be eligible.

■ Congress when enacting the widow's disability provisions required the Secretary to adopt regulations listing physical or mental impairments which were deemed to be sufficient to preclude a widow from engaging in gainful activity. 42 U.S.C.A. § 423(d)(2)(B). These impairment listings have been promulgated by the Secretary and may be found in 20 C.F.R. §§ 404.1504–404.1506, Appendix to Subpart

P of Social Security Regulations No. 4. The impairment listings are intended to be only a proof guideline and it is not essential that a widow's impairment be listed in order for her to be eligible for widow's disability benefits. 20 C.F.R. §§ 404.1504–404.1505. It is clear, however, that factors such as age, education and vocational experience which do apply to ordinary disability cases, do not apply to widow's disability cases. 42 U.S.C.A. § 423(d)(2)(B). *Gillock v. Richardson,* 322 F.Supp. 354 (D.C.Kan.1970).

■■ Even though it is undisputed that a claimant has the burden of proving that she is disabled as defined in the Act, it is equally clear that the Secretary has the duty to insure that its actions are fair and thorough. *Quinonez v. Richardson,* 357 F.Supp. 420 (D.P.R. 1973); *Sale v. Celebrezze,* 210 F.Supp. 836 (D.Ind.1962); *Garrett v. Richardson,* 363 F.Supp. 83 (D.S.C.1973); *Kelley v. Weinberger,* 391 F.Supp. 1337 (D.C.Ind.1974). Because the Social Security Act is essentially remedial the Administrative Law Judge:

". . . should make a conscientious and thorough investigation into all the ailments alleged by the claimant." *Quinonez v. Richardson, supra,* 357 F.Supp. at 422.

It is insufficient to argue that the claimant did not present all possible evidence favorable to her case. *Quinonez v. Richardson, supra,* 357 F.Supp. at 422; *Crowder v. Gardner,* 249 F.Supp. 678, 680 (D.S.C.1966).

■ The conduct of the Administrative Law Judge as revealed in the hearing transcript and his decision reveals that his only concern was the existence of clinical demonstrations of certain specific ailments. His questions of the claimant were merely prefunctory and nonessential to any question of her disability. Although the claimant's non-attorney representative conducted a somewhat lengthy examination of his client the Administrative Law Judge never felt compelled to ask even one fol-

lowup question of the claimant. Even more revealing is the fact that even after the examination of the claimant's two daughters by the plaintiff's representative the Administrative Law Judge again never felt compelled to ask either of them one question. It is not in itself important that the Administrative Law Judge asked no questions but it is clear that his sole concern was the clinical demonstrations of specific ailments contained in the medical reports. The elicitation of testimony and even the hearing itself was merely perfunctory. For all practical purposes the hearing might as well have not occurred. The Administrative Law Judge makes no comment on testimony in ·his Discussion on Conclusions. He makes no mention of the existence or severity of the claimant's pain. His sole concern as revealed in the Decision is the existence of clinical demonstrations of specific ailments. Pain, despite what the defendant claims in his Memorandum, page 17, can in itself establish disability. *Celebrezze v. Warren,* 339 F.2d 833 (10th Cir. 1964); *Brandon v. Gardner,* 377 F.2d 488 (4th Cir. 1967); *Ber v. Celebrezze,* 332 F.2d 293 (2d Cir. 1964); *DePaepe v. Richardson,* 464 F.2d 92 (5th Cir. 1972); *Moncrief v. Gardner,* 357 F.2d 651 (5th Cir. 1966). Furthermore, this Court has accepted the viewpoint as enunciated in *Bittel v. Richardson,* 441 F.2d 1193 (3rd Cir. 1971), and *Ber v. Celebrezze,* 332 F.2d 293 (2d Cir. 1964) that:

> "There can be no doubt that symptoms real to the claimant though unaccompanied by objective medical data may support a claim for disability benefits." *Kelley v. Weinberger,* supra, 391 F.Supp. at 1341.

In addition, the Administrative Law Judge finds that there was no evidence of arthritic impairment because after balancing the medical evidence he concludes that greater weight must be given to the physician who performed, or had performed, tests for the symptomology. From that statement we are led to conclude that Dr. Lanman's X-rays total-

ly failed to detect the existence of any arthritic conditions. This is particularly misleading because the only X-ray taken by or for Dr. Lanman that related to her arthritic condition was of the claimant's left knee. It is interesting that only one such X-ray was taken, and that one of the knee, when the other medical data supported a finding of arthritis in both of the claimant's shoulders, hands, and lumbar spine.

Another matter of particular concern is the effectiveness of the claimant's previous representative. It is not argued that the mere failure of a disability claimant to be represented by an attorney at a Social Security hearing is sufficient to warrant reversal or remand of an adverse administrative decision. However, the importance of counsel in an administrative context has been emphasized by the United States Supreme Court:

> " . . . counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination and generally safeguard the interests of the recipient." *Goldberg v. Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287.

Several courts have reversed or remanded cases involving absence of counsel where other factors were present in the record. See *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38 (2d Cir. 1972)—inability to speak English well and general confusion; *Webb v. Finch,* 431 F.2d 1179 (6th Cir. 1970)—existence of new evidence; *Alamo v. Richardson,* 355 F.Supp. 314 (D. P.R.1972)—existence of mental impairment; and *Roman v. Secretary,* 355 F. Supp. 646 (D.P.R.1972)—existence of mental impairment.

In the case at bar the claimant was represented at the hearing and apparently prior thereto by a law student or law graduate. The attorney of record for the claimant who was accepting the case on a fee basis did not bother to appear. There is case law holding that whenever a claimant is represented by

ineffective counsel a basis for remand exists. *Arms v. Gardner*, 353 F.2d 197 (6th Cir. 1965).

The counsel of record who was handling the case on a fee basis failed to attend the hearing and sent a substitute. The claimant's representative at the hearing did a credible job of examination but he clearly misunderstood the relevant issues. The case involved widow's disability benefits and not ordinary disability assistance. The definition of disability is more limited and the type of evidence most helpful is different. Since age, vocational history and educational attainments are not considered in widow's disability cases much of the testimony brought out by the representative was totally irrelevant. It is clear that he misunderstood the nature of the proceedings and was of little, if any, assistance to the claimant. The representative's ineffectiveness is also revealed by his statement in a letter dated November 30, 1973 that he was completely unfamiliar with the appeal system of the Bureau of Hearings and Appeals.

Only a complete remand with the opportunity to develop and submit relevant medical reports can correct error committed below. The effectiveness of counsel in the instant case certainly did not live up to the expectation of Supreme Court as stated in *Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) where counsel was expected to help delineate the issues and generally safeguard the interests of the recipient.

In addition, Section 1.00(A), Regulation No. 4, Appendix, Subpart P. indicates that pain may be an important factor in causing functional loss of the musculoskeletal system. Yet, the Secretary totally ignores pain as a relevant factor. The Administrative Law Judge in his Discussion and Conclusion never mentions pain as a factor to be used in

evaluating the claimant's arthritic disability allegation. In fact, he never mentions pain at all.

The Administrative Law Judge certainly misrelied and misinterpreted Sections 1.00–1.12 of Regulation No. 4, Appendix, Subpart P. because he failed to consider pain as a relevant factor. The evidence of any value supports a finding that the claimant's arthritis is at least equal in severity to the listings.

 Under these circumstances a remand is absolutely required because good cause exists. Remand is proper in cases involving ineffective representation. *Arms v. Gardner*, 353 F2.d 197 (6th Cir. 1965); *Kelley v. Weinberger*, supra. Good cause for remand also exists whenever the Secretary applied incorrect standards. *Moncrief v. Gardner*, 357 F.2d 651 (5th Cir. 1966). It is clear that whenever the Secretary applied improper standards the case is taken out of the normal "substantial evidence" rule. *Moncrief v. Gardner*, 357 F.2d 651 (5th Cir. 1966); *Ferran v. Flemming*, 293 F.2d 568 (5th Cir. 1961). Finally, remand is proper whenever the Secretary based his decision on only part of the record. *Forbes v. Finch*, 307 F.Supp. 1000 (D.Tenn. 1969). The Secretary clearly ignored subjective medical ailments, most notably the claimant's pain. The Secretary must not be permitted to select the evidence that tends to support his decision and to ignore other equally probative evidence in the record.

This case is now remanded so that the plaintiff can be fully represented by competent counsel at a full evidentiary hearing covering the objective and subjective elements of the plaintiff's medical condition as well as the actual availability of jobs in the national economy for this plaintiff. The Secretary shall make full and complete findings on all aspects of this case.