Carl B. ADAMS, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. No. L 83–54.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 25, 1984.

Jerome L. Withered, Lafayette, Ind., for plaintiff.

R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

## MEMORANDUM and ORDER

ALLEN SHARP, Chief Judge.

This is an action for judicial review of a final decision of the defendant, Margaret M. Heckler, Secretary of Health and Human Services (Secretary), determining that plaintiff, Carl B. Adams, is no longer entitled to a period of disability under Section 216(i) of the Social Security Act (Act) or disability insurance benefits as provided by Section 223 of the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423.

Plaintiff filed an application for a period of disability and disability insurance benefits on March 19, 1975 alleging that he became unable to work in September 1974, at age 39. A period of disability was established for plaintiff. Subsequently, on September 9, 1981, plaintiff was notified that

recent evidence made it appear that he had regained the ability to engage in substantial, gainful activity in August 1981. He received a Social Security Termination Notice dated December 10, 1981, advising him that he was last entitled to benefits in October 1981. Upon reconsideration, that determination was affirmed on the basis of evaluation of the evidence by a physician and a disability examiner from the Indiana State Agency. The Administrative Law Judge (ALJ) considered the case *de novo*, and on September 29, 1982, found that plaintiff was no longer under a disability. Such decision became the final decision of the Secretary of Health and Human Services when it was approved by the Appeals Council on April 4, 1983. The Secretary filed her motion for summary judgment on December 7, 1983. Thereafter, the plaintiff filed his motion on January 3, 1984. Both sides having fully briefed their positions, these cross-motions for summary judgment are now ripe for ruling.

## I.

The only issue before the court in this action is whether the final decision of the Secretary is supported by substantial evidence. Establishment of a disability which would entitle plaintiff to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months; second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. 42 U.S.C. § 423(d)(1)(A), (2)(A); *McNeil v. Califano*, 614 F.2d 142 (7th Cir.1980); *Lieberman v. Califano*, 592 F.2d 986 (7th Cir.1979).

Plaintiff is a 48 year old male with a 5th grade education and past work experience as a furniture delivery man. He had originally been found entitled to a period of disability insurance benefits due to spondylolisthesis, but in a subsequent determination the Social Security Administration determined that his disability ceased in August 1981. The ALJ found that plaintiff's impairments would not preclude him from performing sedentary work activity and, after applying the medical vocational guidelines of appendix 2 to Subpart P, 20 C.F.R. Pt. 404, found that plaintiff was not disabled.

■ The burden of proof rests upon the plaintiff to establish his entitlement to disability insurance benefits under the Social Security Act. *Johnson v. Weinberger*, 525 F.2d 403 (7th Cir.1975). An individual then has the burden of proving his claim of disability in termination of disability cases. Plaintiff must show that his disability has continued past the time of cessation found by the Secretary. *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir.1970).

The Secretary has acknowledged that there were several statements from the plaintiff's treating physicians to the effect that he is unable to work. On September 14, 1981, Dr. Baker reported that plaintiff was physically unable to perform manual labor because of his spondylolisthesis and was not educated or trained for sedentary work. Dr. Baker also stated that plaintiff was permanently and totally disabled and was unable to sit, stand or walk for any significant amount of time without pain. This report was dated September 2, 1982.

Plaintiff has also been treated by Dr. Lloyd Lempke. On May 17, 1982, Dr. Lempke reported that he had not seen the plaintiff during the period dating from 1977 to May 7, 1982. Dr. Lempke reported plaintiff's complaints, asserted they were consistent with his medical evaluation, and opined that plaintiff would be unable to do sedentary work.

Dr. Jaap Lind performed a consultative examination on July 2, 1981. He reported the range of motion of plaintiff's back to be 60 degrees of forward flexion, 10 degrees of back and sideways bending, and approximately 15 degrees of rotation. Straight leg raising tests were negative, and the reflexes, sensory pattern, force and sensation were normal. X-rays showed evi-

dence of the bond grafting plaintiff underwent in 1975.

Dr. Sae Khee examined plaintiff on August 13, 1981. He found some back muscle spasm, and marked limitation in forward bending. Back bending was 5 degrees, lateral was 15 degrees, pelvic rotation 20 degrees, and straight leg raising was at 30 degrees on the right and 45 degrees on the left. Deep tendon reflexes were normal, there was no evidence of muscle atrophy or motor or sensory deficits. He felt plaintiff's main problem was his severe back pain, but stated that plaintiff was capable of performing work activity at a sedentary level. Further, there was also evidence that plaintiff underwent a heart operation in 1979.

At the hearing, plaintiff testified that his back has not improved since he underwent surgery in 1975. He is unable to sit, stand or walk for long periods and estimated he could not lift more than 5 to 10 pounds. He can walk no more than two blocks at a time. He uses nitroglycerin for severe chest pains, which he has not suffered in two or three months. His most comfortable position seems to be lying down, and he has difficulty sleeping due to pain. He does attend church every week but at times stands to relieve his discomfort. He can bend at the waist, but not to his knees; however, he can put on his own shoes and socks.

The ALJ determined that although plaintiff testified to a number of symptoms which would affect his ability to work, they were not adequately supported by the medical evidence. He further found that plaintiff was unable to perform his past relevant work but that he did retain the residual functional capacity to perform sedentary work.

## II.

■ Once a social security claimant has been determined unable to return to past work, as has been found here, the Secretary assumes the burden to designate some other specific area of employment available to him. The medical-vocational guidelines satisfy the Secretary's burden of demonstrating the existence of alternative work for a plaintiff who is unable to return to his past relevant jobs because of his *exertional* impairment. The Secretary carries her burden of proof by supporting with substantial evidence findings that plaintiff meets each criterion in a particular rule in Appendix 2. *Heckler v. Campbell*, —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Kirk v. Secretary*, 667 F.2d 524 (6th Cir.1981).

■ Moreover, since the Secretary had already found plaintiff to have a disability, the Secretary may not terminate the benefits without substantial evidence to justify doing so. In *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir.1981), a case where the Secretary had terminated a claimant's disability benefits, the court held:

> Given that the evidence continued to show the existence of the same condition, and given that there was no question of improvement but only disagreement about how totally disabling the condition had ever been, we think that Mrs. Cassiday made out a *prima facie* case and the burden has shifted to the Secretary to justify the termination of the benefits. *Id.* at 749.

■ *See also, Chrzan v. Heckler*, 572 F.Supp. 844 (W.D.N.Y.1983); *Edwards v. Secretary*, 572 F.Supp. 1235 (E.D.N.Y. 1983). In her motion for summary judgment, the Secretary admitted that plaintiff's disability continues with respect to the fact that he is unable to perform his past relevant work. Accordingly, since plaintiff had an established disability relating to his back injury, the Secretary has the burden of proving by substantial evidence that plaintiff's benefits should have been terminated.

■ The Secretary failed to present any substantial evidence justifying the termination of plaintiff's disability benefits. Further, the ALJ and Appeals Council appeared to have relied solely on the portion of the government consultants' reports stating plaintiff could do sedentary work,

and ignored the overwhelming evidence submitted as to a continuing disability.

The testimony of plaintiff, along with evidence of his educational background and age present clear evidence of a continuing disability. Plaintiff, a 48 year old male with a fifth grade education and a limited ability to read and write, has a prior history of manual labor as a furniture delivery man. Plaintiff filed a Petition and Application for a Period of Disability and Disability Insurance Benefits on March 19, 1975 because he became unable to work in September 1974, when he injured his back while performing his job as a furniture delivery man. His injury necessitated spinal fusion surgery in 1975. Plaintiff was previously found entitled to a period of disability beginning September 30, 1974 and to disability benefits. Additionally, Adams underwent coronary by-pass surgery in August 1979 and also has a history of angina pectoris. He has currently been diagnosed as having coronary artery disease with occasional angina, spinal stenosis and pseudo-arthrosis.

Mr. Adams has consistently testified to the severity of pain he has been experiencing. He testified that lying down is his most comfortable position and that he cannot engage in any hobbies or activities because of the severe pain. Mr. Adams testified that he cannot sit long enough to attend a church service without pain. He has to spend several hours lying down each day in order to relieve the pain in his lower back and legs and he often has swelling, numbness and muscle spasms when he moves. He was unable to drive himself to his hearing.

The medical findings and opinions of plaintiff's treating physicians present substantial evidence of a continuing disability. The ALJ and Appeals Council acknowledged their total lack of consideration for the expert medical findings and opinions of the plaintiff's treating physicians, Dr. Lempke and Dr. Baker. However, two factors that must be considered by the Secretary are both the medical data and findings and the expert medical opinions. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir.1966). Plaintiff had been seeing Dr. Lempke on a regular basis prior to November 1977, and has been examined by him on May 7, 1982, September 7, 1982 and December 6, 1982. Dr. Lempke performed plaintiff's spinal fusion surgery and therefore has first-hand knowledge as to the residual impairments that plaintiff suffers. Dr. Baker has also been treating plaintiff on a regular basis for his back injuries and attendant pain. Thus, based on their examinations of the plaintiff, Dr. Baker and Dr. Lempke have stated that it is their medical opinion that the plaintiff is permanently and totally disabled.

Additional evidence which was received into evidence by the Appeals Council included a report and a transcription of a recorded statement from Dr. Lloyd Lempke. Dr. Lempke stated that plaintiff's subjective complaints of pain in his back were consistent with his medical evaluation and proceeded to set forth his medical findings. Dr. Lempke found during his examination and x-rays of plaintiff that as a result of the lumbar fusion he has a vertebrogenic disorder of the spine consisting of a degenerative disc syndrome that progressed to pseudo-arthrosis as well as spinal stenosis. He further stated that this disability had persisted for at least three months and is expected to last at least twelve months. He stated, consistent with Dr. Baker, that plaintiff is unable to do even sedentary work.

Thus, the medical findings and opinions of plaintiff's testing physicians, the testimony of plaintiff and evidence of his educational background, work history and present age are clear and unequivocal evidence of a continuing disability. Moreover, the Secretary failed to introduce any substantial evidence in the record contradicting the evidence submitted by plaintiff as to his continuing disability.

### III.

The reports and opinions of a claimant's treating physicians are to be given greater weight than those of the govern-

ment-paid consultants who observe a claimant once. *Allen v. Weinburger,* 552 F.2d 781, 786 (7th Cir.1977); *Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y.1974). In *Allen,* the claimant's attending physician concluded that he was totally and permanently disabled. The Court of Appeals put great weight on this doctor's opinion because he was the claimant's treating physician and therefore had an ongoing opportunity to treat and observe Mr. Allen. 552 F.2d at 786. Similarly, in the present case, Dr. Lempke and Dr. Baker's conclusions that Mr. Adams is totally and permanently disabled due to his back injuries must, as a matter of law, be given the greatest weight.

■ However, the Appeals Council failed to even discuss the additional evidence submitted by the claimant. In *Bryant v. Califano,* 484 F.Supp. 213 (N.D.Tex.1980), the Court reversed and remanded a final decision of the Appeals Council because of its failure to discuss additional evidence submitted by the claimant "other than to say it has been reviewed." *Id.* at 214–15. The lack of consideration on behalf of the Appeals Council is particularly egregious in this case since the ALJ had refused to give Dr. Lempke's report any weight because it did not contain specific findings, implicitly noting that they considered such evidence highly relevant. Once Dr. Lempke submitted specific medical findings resulting from his examinations and x-ray of plaintiff, the Appeals Council summarily dismissed the evidence by merely stating they "considered" it. The fact is, Dr. Lempke has never deviated from his long-held position as to plaintiff's disability. The ALJ and the Appeals Council reached their decisions only by ignoring Dr. Lempke's opinions and relying solely upon the one-time, government-paid medical consultant. Under the great weight of authority, this constitutes error as a matter of law.

Further, it is apparent that this entire matter came about because of the lack of knowledge on the part of Dr. Lempke of the federal regulations on disability at the time he wrote his May 17, 1982 and Sep-

tember 7, 1982 opinion letters. During the taped interview of January 5, 1983, Dr. Lempke stated:

JW: Now, Dr. Lempke, when you saw Mr. Adams in May of 1982, did you have any of these social security federal regulations in front of you at that time?

DR: No, I had never seen them at the time. I had not seen them at that time.

JW: Alright. Assuming that you had had those federal regulations with you and that you had asked him the appropriate questions and he had given you the same responses he gave a month ago, would your opinion have been in May 1982 that he was disabled under the regulations?

DR: Yes I feel he would fall under that category.

JW: Isn't it true that you didn't elaborate in your reports to Mr. Smith or to the Social Security Administration back in 1982 because you didn't have the regulations in front of you?

DR: Yes I didn't realize that was a, that, that's what was used to determine whether he was disabled. I had never seen them before. Therefore, I obviously didn't answer some of the questions that were there.

In addition, during that interview, Dr. Lempke unmistakably identified each and every requirement under listing 105(c) and described how his clinical findings brought Carl Adams within that listing.

The reports and findings of plaintiff's treating physicians must be given greater weight than the reports of the government consultants. Therefore, by relying solely on the reports of the consultative examiners, the Secretary has failed to meet the burden of establishing by substantial evidence that plaintiff's benefits should have been terminated.

## IV.

■ The evaluation of the evidence and the findings of the ALJ should state the effect of all the claimant's ailments, com-

plaints, symptoms, and clinical findings in combination as they apply to his eligibility for benefits. *Hicks v. Gardner*, 393 F.2d 299 (4th Cir.1968); *Burnam v. Schweiker*, 682 F.2d 456 (3rd Cir.1982); *Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662 (1st Cir.1981); *Smith v. Weinberger*, 394 F.Supp. 1002 (D.Md.1975). The record is replete with evidence of plaintiff's ailments, complaints, symptoms and clinical findings. Dr. Lempke stated that as a result of plaintiff's lumbar fusion he has pain in his lower back, crimping and numbness in the calf of his leg, and pain in all the digits of his right foot. Further, Dr. Lempke stated that plaintiff has had "marked muscle spasms and loss of motion in the lumbar spine." Dr. Lempke stated that plaintiff has radicular distribution of motor loss as well as sensory and reflex loss. Dr. Baker's report was relevant in that it shows plaintiff's significant motor loss and muscle weakness in that he is unable to sit, stand or walk for any significant amount of time without pain. Dr. Rhee characterized plaintiff's laminectomy (spinal fusion) with residual pain in the lower back as being his most disabling problem, thus, corroborating Dr. Lempke's findings. He further stated that plaintiff had a coronary artery disease with occasional angina with the EKG showing "old interior wall myocardial infarction." Dr. Jaap J. Lind's report noted a marked limitation in plaintiff's range of motion as well as muscle spasms which developed in his right side when he moved forward during the examination.

The ALJ and Appeals Council only discuss the portion of the government consultants reports that state that plaintiff is capable of performing sedentary work. Given the overwhelming evidence in the record below as to plaintiff's present impairments, the Secretary should not have omitted considering the combination of his injuries. Since the Secretary failed to even consider the disabling effect of the combination of plaintiff's established injuries, she has failed to meet her burden of establishing by substantial evidence that plaintiff's benefits should have been terminated.

## V.

The ALJ held that plaintiff's testimony that he suffered pain was not credible. However, there was absolutely no evidence contradicting the reports of plaintiff's treating physicians, the consultative examiners and plaintiff's assertions that he is subject to a constant severe pain. In fact, the report of the government's consultant, Dr. Sae Rhee, stated "this patient's main problem at the present time is that he has had right lower back pain which radiates to the left leg." Dr. Rhee went on to label plaintiff's pain as "quite severe," and "the most disabling problem" and defined his problem as "chronic and there is no further treatment to improve his physical capacity." Dr. Rhee stated that plaintiff had functional limitations in that he is unable to walk fast, stoop, push or pull. Dr. Jaap Lind, another government consultant, also noted the fact plaintiff had marked muscle spasms and a limited range of motion. The ALJ and Appeals Council totally discounted this evidence submitted by the government consultants corroborating the assertions of plaintiff and his treating physicians without justification.

The ALJ focused solely on objective medical findings and ignored the uncontradicted evidence of severe pain plaintiff endures. In *Aubeuf v. Schweiker*, 649 F.2d 107 (2nd Cir.1981) the Court of Appeals held the ALJ had used an improper legal standard in assessing the severity of the claimant's pain. The court stated that it appeared the ALJ had erroneously reached its conclusion by applying a requirement that the claimant "conclusively establish through objective clinical findings a cause for the claimant's pain." As the court stated in *Aubeuf*, it was not necessary for plaintiff to conclusively establish through objective clinical findings a cause for the pain. Even so, the objective clinical findings of degenerative disc syndrome, spinal stenosis and pseudo-arthrosis more than adequately establish causes of Mr. Adams' pain. *See also, Coleman v. Heckler*, 572 F.Supp. 1089 (D.Colo.1983).

There can be no question that pain alone can be disabling. *See, Celebrezze v. Warren,* 339 F.2d 833 (10th Cir.1964); *Tillman v. Weinburger,* 398 F.Supp. 1124 (N.D.Ind. 1975). The opinion of a consultant physician who examined the claimant once is generally outweighed by the reports of the claimant's two treating physicians who considered him to be totally disabled.

## VI.

 Recent cases have established that once a claimant has shown he cannot do his regular job, the burden of proof shifts to the government to prove by substantial evidence that there is other work that the claimant is able to perform existing in significant numbers in the national economy. *Small v. Califano,* 565 F.2d 797 (1st Cir. 1977); *Hernandez v. Weinburger,* 493 F.2d 1120 (1st Cir.1974).

■ The sole evidence as to whether plaintiff could engage in substantial gainful employment came from the government medical consultants. The ALJ and Appeals Council heavily relied on these opinions stating that plaintiff could do sedentary work. However, there was no evidence whatsoever as to specific jobs in the Dictionary of Occupational Titles which the government claims plaintiff could perform. Moreover, the qualifications of Drs. Lind and Rhee in the medical field in no way qualify either physician to speak as a vocational expert. The government had the opportunity to secure a vocational expert to rebut plaintiff's claim that he was unable to work. And in order to justify a termination of benefits, it had the duty and the burden of proving plaintiff could perform certain, specified jobs which exist in significant numbers in the national economy. The government has failed to even address this issue.

Dr. Rhee also stated that plaintiff was able to sit, stand, walk slowly, manipulate his arms and fingers, use public transportation as well as do sedentary work. However, Dr. Rhee failed to note for what duration of time plaintiff could do any of the above-mentioned activities or whether the activities could be done on a repetitive basis. The reports by Dr. Baker, Dr. Lempke and plaintiff's testimony definitively established that plaintiff cannot engage in any of these above-mentioned activities for any length of time.

Finally, the Secretary failed to submit *any* evidence that the jobs, if any, that the plaintiff allegedly could do exist in significant numbers in the national economy. *Ferguson v. Schweiker,* 641 F.2d 243 (5th Cir.1981). *See also, Van Huss v. Heckler,* 572 F.Supp. 160 (W.D.Va.1983).

The record in the case evinces no genuine issues of material fact. Plaintiff's disability benefits should never have been terminated. The government has failed in its burden of justifying the termination. Plaintiff, Carl B. Adams' motion for summary judgment is GRANTED; the Secretary is ordered to reinstate benefits and to pay all past due benefits since the date of termination. Judgment shall enter accordingly.