Blanca BAEZ, Plaintiff

v.

Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant.

Civil Action No. 07–30075–KPN.

United States District Court, D. Massachusetts.

April 29, 2008.

Richard C. Roth, Law Office of Richard C. Roth, Springfield, MA, for Plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Defendant.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS and DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (Document Nos. 10 and 13)*

NEIMAN, United States Chief Magistrate Judge

This matter is before the court pursuant to 42 U.S.C. § 405(g) which provides for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to Social Security Disability Income ("SSDI") benefits. Blanca Baez ("Plaintiff") claims that the Commissioner's decision denying her SSDI benefits—memorialized in a July 21, 2006 decision by an administrative law judge—

is not supported by substantial evidence and reflects errors of law. Plaintiff has moved to reverse the decision or, alternatively, to remand the matter for further proceedings. The Commissioner, in turn, has moved to affirm.

With the parties' consent, this matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c) for all purposes, including entry of judgment. For the reasons set forth below, Plaintiff's motion will be allowed to the extent it seeks a remand.

### I. STANDARD OF REVIEW

■■ A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir.1991) (citation and internal quotation marks omitted).

■■ The resolution of conflicts in evidence and the determination of credibility are generally for the Commissioner, not for doctors or the courts. *Rodriguez*, 647 F.2d at 222; *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141

(1st Cir.1987). A denial of benefits, however, will not be upheld if there has been an error of law in the evaluation of a particular claim. *See Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir.1996). In the end, the court maintains the power, in appropriate circumstances, "to enter ... a judgment affirming, modifying, or reversing the [Commissioner's] decision" or to "remand[ ] the cause for a rehearing." 42 U.S.C. § 405(g).

### II. BACKGROUND

Plaintiff, who was born on September 19, 1952, has a high school degree and resides in Springfield, Massachusetts. (Administrative Record ("A.R.") at 23, 212.) The following sections briefly outline her employment history, her medical treatment, and the procedural posture of the case.

### A. EMPLOYMENT HISTORY

Plaintiff was employed with intermittent layoffs as an "electronic assembler supervisor" at the Emerson electronic manufacturing plant in Dorado, Puerto Rico, from 1971 until 1989, from 1992 until 1993, and then again in 1996. (*Id.* at 123.) She worked in 1997 as a production and material handler in Dorado and, in 1998, as an electronic assembler for APC in Fort Myers, Florida. (*Id.*) In 2000, Plaintiff worked for six months as a packer in the Hanes Warehouse in Cataño, Puerto Rico. (*Id.*) She was last employed from June until December of 2001 as an office clerk in a state agency in Puerto Rico. (*Id.*)

### B. MEDICAL TREATMENT

Plaintiff was treated from June 8, 1992, through June of 2004 in Puerto Rico by Dr. Javier Tirado for "lumbalgia" and "polyarthralgia." [1] (*Id.* at 299.) She was pre-

---

1. "Lumbalgia" means low back pain or lower back pain, while "polyarthralgia" means pain in two or more joints. *See www.medical.merriam-webster.com.*

scribed Percocet and Ultram for her pain. (*Id.*) Between January of 2001 and January of 2003, Dr. Tirado also diagnosed Plaintiff with: (1) a lumbosacral disc problem, (2) shoulder pain, (3) a lumbar disc problem, (4) osteoarthritis, (5) left shoulder bursitis, and (6) right hip bursitis. (See generally Document No. 11) ("Pl.'s Brief" at 8.)

From April through November of 2005, Plaintiff was treated at the Mason Square Neighborhood Health Center in Springfield. (A.R. at 131–46.) During the course of her treatment, Plaintiff reported that she suffered from depression, back pain, glaucoma, and hypothyroidism, for which she received prescriptions. (*Id.*)

Plaintiff was seen in November of 2005 at the Baystate Medical Center regarding her lower back pain. (*Id.* at 219.) Plaintiff thereafter attended fifteen physical therapy sessions, from which she was discharged on March 23, 2006. (*Id.* at 219–31.) On March 25, 2006, an MRI of Plaintiff's lumbar spine revealed disc desiccation and a "[s]mall left posterolateral disc herniation at L4/L5 with mild displacement of the left L5 root." (*Id.* at 203.) Upon referral, she began receiving treatment at the Baystate Pain Management Center. (*Id.* at 204–16.) During the course of this treatment, Dr. Stuart Dunbar noted that Plaintiff "has a lower back pain secondary to disc herniation in the L4–5 area with some nerve impingement." (*Id.* at 213.)

Meanwhile, from March of 2000 through August of 2001, Plaintiff was also treated by Dr. Jose Fernandez, an ophthalmologist, for "[g]laucoma secondary to essential iris atrophy" in her right eye. (A.R. at 126–30.) Thereafter, from August of 2001 through July of 2003, Plaintiff was also treated for "iridocorneal endothelial syndrome," glaucoma, and cataracts by Dr. Juan Nevarez. (*Id.* at 148.) He indicated that Plaintiff could work but needed to avoid jobs "requiring full visual fields." (*Id.* at 149.) In June of 2005, Plaintiff was evaluated for laser eye surgery by Dr. Pamela Henderson and was treated over the next six months for glaucoma and eye pressure. (*Id.* at 188–200.) Plaintiff was then referred to Dr. Steven Berger, who diagnosed her with "uncontrolled glaucoma in the right eye with corneal decompensation"; he performed a corneal transplant on Plaintiff on June 20, 2006. (*Id.* at 186, 280–88.)

C. MENTAL HEALTH TREATMENT

Plaintiff has reported mental health problems since May of 2001. (A.R. at 302–15.) She was prescribed Zoloft in January of the following year and, in October of 2002, was diagnosed with depression. (*Id.*)

On June 20, 2005, Dr. Robert Eckert conducted a psychological examination of Plaintiff. (*Id.* at 150–53.) He diagnosed Plaintiff with both dementia and depression with psychotic features and noted the need to rule out early onset Alzheimer's disease. (*Id.*) Plaintiff was also evaluated at the Gandara Mental Health Center that same June. (*Id.* at 241.) After noting that Plaintiff had crying spells, memory problems and suicidal ideation, the clinician prescribed anti-depressants and Plaintiff began psychotherapy. (*Id.*)

Shortly thereafter, on July 11, 2005, Alan Lazerson, a psychologist with the Disability Determination Services ("DDS"), completed a Psychiatric Review Technique assessment form. (*Id.* at 155.) Dr. Lazerson concluded that there was insufficient medical evidence of record regarding Plaintiff's impairments prior to June 30, 2003. (*Id.*) He concluded, however, that, as of April 12, 2005, Plaintiff suffered from certain organic and affective disorders. (*Id.* at 155–69.) On November 2, 2005, Dr. Norman Raiske, a DDS psy-

chologist, concurred with Dr. Lazerson. (A.R. at 170–84.)

On July 7, 2006, James Smith, a physician, completed a Mental Residual Functional Capacity questionnaire. (*Id.* at 273–77.) Dr. Smith concluded that, as of June 5, 2005, Plaintiff's impairments would cause her to miss more than four days of work per month. (*Id.* at 277.) He further concluded that Plaintiff would be unable to "[r]emember work-like procedures" and "would have difficulty working at a regular job on a sustained basis" because of her inability to concentrate, paranoia, nervousness, forgetfulness, and confusion. (*Id.* at 275, 277.)

### D. PROCEDURAL HISTORY

Plaintiff applied for SSDI benefits on April 12, 2005, alleging an onset date of disability of December 31, 2001. (*Id.* at 56.) Plaintiff's application was denied initially and upon reconsideration. (*Id.* at 25, 30.) She then requested and obtained a hearing before an administrative law judge ("ALJ") (*id.* at 33), at which she was represented by a paralegal with a law firm other than the one presently representing her.

On July 21, 2006, the ALJ concluded in a written decision that Plaintiff did not have a severe, medically determinable impairment prior to the date she was last insured, June 30, 2003. (*Id.* at 12–22.) Plaintiff's request for review by the Appeals Council was denied (*id.* at 6–9), thereby making the ALJ's ruling the final decision of the Commissioner.

### III. DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an insured status and, if prior to its expiration, was under a disability. *See* 42 U.S.C. § 423(a)(1)(A) and (E). In the instant case, Plaintiff's insured status expired on June 30, 2003.

### A. DISABILITY STANDARD AND THE ALJ'S DECISION

The Social Security Act ("the Act") defines disability, in part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A). *See Barnhart v. Thomas*, 540 U.S. 20, 25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).

In determining disability, the Commissioner follows a five-step protocol as described by the First Circuit:

> First, is the claimant currently employed? If [s]he is, the claimant is automatically considered not disabled.

> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits the claimant's physical or mental capacity to perform basic work-related functions." If [s]he does not have an impairment of at least this degree of severity, [s]he is automatically considered not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an im-

pairment of so serious a degree of severity, the claimant is automatically found disabled.

Fourth, .... does the claimant's impairment prevent [her] from performing work of the sort [s]he has done in the past? If not, [s]he is not disabled. If so, the agency asks the fifth question. Fifth, does the claimant's impairment prevent [her] from performing other work of the sort found in the economy? If so, [s]he is disabled; if not, [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6–7 (1st Cir.1982). In the instant case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability (question one), but that there was no evidence that she was under a severe, medically determinable impairment prior to expiration of her insured status on June 30, 2003 (question two). As a result, the ALJ concluded, without addressing the remaining questions, that Plaintiff was not under a disability.

B. *ANALYSIS OF PLAINTIFF'S CHALLENGE TO THE ALJ'S DECISION*

■ Plaintiff challenges the ALJ's decision on at least two fronts. First, Plaintiff asserts that the ALJ's finding at step two of the five-step protocol was in error. In essence, Plaintiff argues that the loss of the use of her right eye readily meets the *de minimis* standard for a severe impairment. *See McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1127 (1st Cir.1986). Second, Plaintiff seeks to furnish what she describes as new medical evidence regarding the onset of her disability.

The court finds these particular challenges unpersuasive. There was little, if

anything, before the ALJ which demonstrated that she was under a disability prior to the expiration of her insured status on June 30, 2003. Plaintiff's representative conceded as much at the administrative hearing:

ALJ: So let me ask you a question before we even start the case. Do I have anything in this file, any medical evidence in this file—because remember, I have to have a severe medically determinable impairment, otherwise I have to find her not qualified at step two—do I have any medical evidence in this file that I can hang my hat on, to establish that your client was disabled prior to June 30th, 2003? If so, you have to point me to it. Because I don't see it.

ATTY [sic [2]]: Well, Your Honor, you know that I've always been honest with you—

ALJ: Please, please continue your admirable role.

ATTY [sic]: No—

ALJ: Okay so, so there's no such evidence?

ATTY [sic]: No, I, I was—like I say, I was under the assumption it was an SSI case—...

(A.R. at 330.)

■ The quoted exchange demonstrates that Plaintiff's representative originally assumed, incorrectly, that this case concerned "SSI," *i.e.*, Supplemental Security Income. SSI is a needs-based program in which an individual's "insured status" plays no role, even though both SSI and SSDI otherwise define "disability" in the same way. *See* 42 U.S.C. § 1381a. Plaintiff's representative's mistake meant that he was unprepared and unable to point to any evidence tending to show that Plaintiff was under a disability prior to the expiration of Plaintiff's insured status.[3]

---

**2.** Despite the reference to Plaintiff's "attorney," it is undisputed, as indicated, that her

representative at the time was a non-attorney paralegal.

**3.** When later explaining the situation to Plain-

■ Relatedly, the court is unconvinced that the "new" evidence which Plaintiff now offers and which she sought to present to the Appeals Council as well—*i.e.,* a September 20, 2006, Physical RFC form submitted by Dr. Javier Tirado—sheds any light on the severity of her impairments prior to June 30, 2003. *See Evangelista,* 826 F.2d at 139 (to be considered "new," records must not be cumulative or reiterate what is already in the file). If anything, Dr. Tirado's latest submission indicates that "the earliest date that the description of symptoms and limitations in this questionnaire applies" is June 7, 2004. (A.R. at 303.) As is obvious, this date follows the expiration of Plaintiff's insured status by nearly one year.

Plaintiff, however, points to yet another issue which, in the court's opinion, justifies remand, namely, Plaintiff's representative's complete lack of awareness regarding the status of her eligibility for SSI benefits. Although, as the above excerpt indicates, Plaintiff's representative actually thought the administrative hearing concerned SSI, not SSDI, it is now patently clear that Plaintiff was actually eligible for *and receiving* SSI benefits at the time of the administrative hearing. Plaintiff, in fact, had applied for SSI at the same time she applied for SSDI, April 12, 2005, and was approved for SSI on July 11, 2005, based on her psychiatric condition. Unfortunately, there was little in the administrative record before the ALJ (and nothing

mentioned by Plaintiff's representative) which documented Plaintiff's then-existing SSI eligibility. This lack of information, the ALJ stated, formed "an insurmountable and material problem" for Plaintiff, (*id.* at 18, note 1), even though he opined that she was then "presently disabled due to a dementia which prevents her from functioning in a work environment" (*id.* at 21).

■ It practically goes without saying that "a claimant has a statutory right to counsel at disability hearings." *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991) (citing 42 U.S.C. § 406). *See also* 20 C.F.R. § 404.1700 (2008). Not only must a claimant be informed of this right, but the claimant's waiver of counsel is ineffective unless the claimant receives "sufficient information to enable him [or her] to intelligently decide whether to retain counsel or proceed *pro se.*" *Id.* at 584. More particularly, a claimant must be informed of the benefits of procuring counsel, the prospect of either free or contingency based representation, and the statutory limitation on attorney's fees in disability cases. *Id.*

■ Concomitantly, ineffective representation can be grounds for remand, although the types of ineffective representation may well vary. *See, e.g., Arms v. Gardner,* 353 F.2d 197 (6th Cir.1965); *Tillman v. Weinberger,* 398 F.Supp. 1124 (N.D.Ind.1975); *Kelley v. Weinberger,* 391 F.Supp. 1337 (N.D.Ind.1974). In *Arms,*

---

tiff, the ALJ stated as follows:

> Ms. Baez, in order to find that you're entitled to disability benefits under the application you filed, I have to find that there was medical evidence to show that you were disabled at, or prior to, June 30, 2003. You—your, your—I asked your representative, who's familiar with your file, whether or not there was any medical evidence in this file that he was aware of that would establish that you were disabled prior to June 30, 2003. He indicated that he was aware of no such information. What that

> means is, is that all the medical evidence that's in the file deals with findings that doctors and, and, and other people of medical knowledge made for periods of time after June 30, 2003. There's only two exceptions that [your representative] and I were able to find to what I just said. Both of those exceptions deal with reports that were filed by eye doctors. And neither of them seem to indicate that, based on what they found, that you were disabled based on those findings.
>
> (A.R. at 331–32.)

for example, the claimant's attorney "took no part in examination of witnesses, offered no testimony on [claimant's] behalf and gave the [claimant] no apparent legal assistance in the preparation of the case, admitting of the record that he knew very little about Social Security laws." *Id.*, 353 F.2d at 199. Since the claimant did not receive "the proper representation to which he was entitled," the court determined that the claimant "cannot be held to have had the full hearing that he was entitled to" and remanded the case for further proceedings. *Id.* Likewise, the court in *Kelley*, after expressing its concern "about the quality of representation, or the lack of it" (*i.e.*, the claimant's representative failed "to develop evidence concerning the claimant's difficulty in performing his daily activities" and failed to object to improper questions), remanded the matter for a new hearing. *Id.*, 391 F.Supp. at 1343–44.

Similarly in *Tillman*, the court held that "whenever a claimant is represented by ineffective counsel a basis for remand exists." *Id.*, 398 F.Supp. at 1129–30. There, the claimant's representative failed to show up for the proceeding, sending instead "a law student or law graduate." *Id.* at 1129. Despite the fact that the substitute representative "did a credible job," the court ordered a new hearing because the representation "certainly did not live up to the expectation of [the] Supreme Court as stated in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) where counsel was expected to help delineate the issues and generally safeguard the interests of the recipient." *Id.* at 1130. In particular, the court was concerned with the fact that the substitute representative "misunderstood the relevant issues," confusing widow's disability benefits with ordinary disability assistance, causing him to offer testimony that was completely irrelevant to the claim. *Id.*

■ Here, too, Plaintiff's non-attorney representative was completely ineffective with regard to a key aspect of the case, namely, Plaintiff's prior approval for SSI benefits (based on her psychiatric condition) and its possible effect on her SSDI eligibility. Given this lack of awareness, Plaintiff's representative could not and did not adequately address the ALJ's inquiries. For example, when asked if this was a Title II (SSDI) case only, Plaintiff's representative, having been made aware that Plaintiff had applied for both SSDI and SSI, responded, "[y]es, sir." (A.R. at 319.) The following exchange then ensued:

ALJ: When was the SSI [Title XVI] application filed?

ATTY [sic]: Well now, I—I, I don't know if we filed—I—in our representation form we put in for full benefits. Does that make any difference?

ALJ: I don't think it will. I think that what I need is an application, not a representation—

ATTY [sic]: Okay.

ALJ:—form. From my understanding, this is only a Title II [SSDI] claim.

ATTY [sic]: Okay. We always, we always mark both of them off.

ALJ: You can mark it on your representation form; however, a representation form does not constitute an application, as I'm sure you know. So assuming that I don't have that, I only have what I have before me.

ATTY [sic]: Okay.

ALJ: Are you aware of an application that you filed for Title—under Title XVI?

ATTY [sic]: There must have—I would, I would—seem—

ALJ: Are you aware of it? . . .

ATTY [sic]: I just went through here and I didn't, I did not see one.

ALJ: Okay, then I'm going to assume that there isn't one, because I haven't seen one either.

(A.R. at 323–25.) Thereafter, the ALJ stated, incorrectly, in his decision that "[n]o application was ever filed pursuant to title XVI [SSI] of the act, which in this case turns out to be an insurmountable and material problem for the claimant." (A.R. at 18 n. 1.)

As is now apparent, Plaintiff's representative led the ALJ in the wrong direction. Had he been prepared, Plaintiff's representative would have noticed at least one reference to her having been found eligible for SSI. (See, *e.g.*, A.R. at 103 ("Psych. portion of claims was adjudicated favorably for title XVI [SSI] and I/E for Title II [SSDI]."). In turn, had the ALJ known that an SSI application had not only been filed but approved, he may well have not deemed Plaintiff's claim "insurmountable."

Compounding matters, the only evidence of record before the ALJ with regard to Plaintiff's disability prior to June 30, 2003, related to her visual impairment, which evidence, as described, fell short of demonstrating a disability. As a result, the ALJ had little choice but to conclude that Plaintiff's vision problems did not meet the threshold of a severe, medically-diagnosable disability. Presented with no other evidence, the ALJ could not take into account Plaintiff's approval for SSI based on her psychological impairments.

To be sure, Plaintiff's SSI eligibility did not require a finding as to the onset of these psychological impairments; it merely required that Plaintiff be disabled at the time of her application, a condition of eligibility which the Commissioner had little trouble reaching shortly after she applied. As a result, the approval of Plaintiff's *SSI* application in July of 2005 provides no information as to whether the onset of her psychological impairments arose two years before, *i.e.*, prior to June 30, 2003, the critical date for Plaintiff's potential *SSDI* eligibility. Still, Plaintiff's representative was not at all prepared to develop the record with this in mind. This, in the court's opinion, proved prejudicial to her case.

In sum, the matter must be remanded to establish the onset date regarding Plaintiff's psychological maladies. Of course, there is no assurance that the ALJ will reach a different result regarding Plaintiff's eligibility for SSDI. The errors by Plaintiff's representative, however, cast doubt on the result as it presently stands, making it imperative to remand the matter so as to ensure that the process is fair.

### IV. CONCLUSION

For the reasons stated, the Commissioner's motion to affirm the ALJ's decision is DENIED and Plaintiff's motion is ALLOWED to the extent it seeks a remand. The matter is hereby remanded for a rehearing consistent with this opinion.

IT IS SO ORDERED.